UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES | ) |
| | ) M.J. No. 21-6302-MPK |
| v. | ) |
| | ) |
| NATHALIE SANCHEZ-SILVA, | ) |
| | ) |
| Defendant. | ) |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Peter Skutnik, being duly sworn, depose and state as follows:

1. I am a Special Agent (SA) with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), currently assigned to the Office of the Special Agent in Charge (SAC), Boston, Massachusetts. I am authorized to investigate crimes involving violations of Title 18, Title 8, Title 19, and Title 21 of the United States Code. I have been employed as an HSI Special Agent since June 2008. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training to become a federal agent; specifically, I received certification in the Criminal Investigator Training Program and the ICE Special Agent Training Program. I am currently assigned to the Border Enforcement Task Force (BEST) that is located at the Boston Logan International Airport, Boston, MA. As an agent assigned to the BEST team, I am involved with a variety of investigations including, but not limited to money laundering and drug trafficking.

2. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations, and

the court-authorized interception of communications. I have also reviewed taped conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs.

3.  I submit this affidavit in support of a Criminal Complaint charging Nathalie SANCHEZ-SILVA with violating Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii) (possession with intent to distribute five kilograms or more of cocaine).

4.  I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of HSI and other federal, state, and local law enforcement agencies. I have also reviewed information from a variety of additional sources, including court authorized interception of wire and electronic communications.

5.  This affidavit is submitted for the limited purpose of establishing probable cause to believe that SANCHEZ-SILVA has committed the above offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

6.  On May 13, 2021, I received information from HSI SA Stephen Avery in San Juan, Puerto Rico, that a female passenger traveling from San Juan through Miami, Florida, to Boston, Massachusetts was believed to be part of a drug trafficking organization and potentially transporting a large amount of drugs from Puerto Rico to Massachusetts. SA Avery provided me with the name of the female – Nathalie SANCHEZ-SILVA, her date of birth, and her telephone

number, and informed me that she was traveling on American Airlines flight 2247 from Miami to Boston, arriving at 12:03 p.m. on May 13, 2021.

7. Officers with Customs and Border Protection (CBP) went to the gate B-22, where flight 2247 was arriving, to attempt to identify SANCHEZ-SILVA. CBP officers inquired with passengers disembarking from the plane as to their names. SANCHEZ-SILVA disembarked from the plane and provided her name at the request of the CBP officers. At that time, a CBP officer inquired if SANCHEZ-SILVA was willing to speak with him. The officer told SANCHEZ-SILVA that she did not have to speak with him and could continue on her way if she preferred. SANCHEZ-SILVA agreed to speak with officers. Ultimately, SANCHEZ-SILVA stated that she had been paid $5,000 to transport two suitcases from San Juan, Puerto Rico, to Boston. She stated that she did not know what was in the suitcases, but she did not think it was normal to be paid $5,000 to take the suitcases to Boston.

8. While SANCHEZ-SILVA was speaking with the CBP officers, other CBP officers identified the luggage – two suitcases – that SANCHEZ-SILVA had checked in San Juan. A drug-trained canine alerted to one of the suitcases, indicating the presence of a narcotic odor. The suitcases were placed on the baggage claim conveyor belt for collection.

9. CBP officers and I accompanied SANCHEZ-SILVA to the baggage claim area, where she retrieved her luggage from the baggage carousel at my request. I then requested SANCHEZ-SILVA's consent to search her luggage. SANCHEZ-SILVA gave consent to search her luggage and signed a written, Spanish-language Department of Homeland Security consent form. SANCHEZ-SILVA stated that she understood and could speak English, but that her primary language was Spanish.

10.    I then accompanied SANCHEZ-SILVA to the Massachusetts State Police barracks at Logan Airport. A Spanish-speaking State Police Trooper (Trooper Leon) and a female State Trooper (Trooper Gonzalez) met with SANCHEZ-SILVA and me at the barracks. Trooper Leon spoke with SANCHEZ-SILVA in Spanish and gave her her *Miranda* rights in Spanish, which SANCHEZ-SILVA stated she understood. SANCHEZ-SILVA then confirmed her consent to search her baggage and initialed the Spanish-language consent-to-search form.

11.    SANCHEZ-SILVA agreed to speak with Trooper Gonzalez and me. The interview was audio- and video-recorded. During the interview, SANCHEZ-SILVA stated that she was picked up at a gas station in San Juan, Puerto Rico, by an unknown male, who drove her to the airport and provided her with two suitcases to take with her to Boston. SANCHEZ-SILVA stated that she was to be contacted by an unknown person when she arrived in Boston and given instructions on where to go. SANCHEZ-SILVA further stated that she was to be paid $5,000 for delivering the suitcases once she returned to San Juan. SANCHEZ-SILVA stated that she never looked inside the suitcases, but that she believed there to be drugs inside the suitcases.

12.    Agents searched SANCHEZ-SILVA's luggage and located six brick-shaped bundles wrapped in cellophane inside each of the two suitcases. The total weight of the twelve bundles is 12.9 kilograms. Four of the bundles were field tested using a Gemini scanner; they tested positive for the presence of cocaine.

//

//

//

//

//

**Conclusion**

13. Based upon the foregoing, there is probable cause to believe that on May 13, 2021, Nathalie SANCHEZ-SILVA did possess with intent to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii).

/s/ Peter Skutnik
_____
Peter Skutnik
Special Agent
Homeland Security Investigations

Sworn to by telephone in accordance with Fed. R. Crim. Pr. 4.1 on May 14, 2021,

_____
HON. M. PAGE KELLEY
United States Magistrate Judge
District of Massachusetts